UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC M. SISCO, | No. 2:16-cv-1519 JAM KJN P |
| Plaintiff, | |
| v. | ORDER |
| M.D. McDONALD, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Plaintiff requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, but did not provide the certified documents required by the court's July 18, 2016 order. On August 23, 2016, the undersigned recommended that this action be dismissed based on plaintiff's failure to comply. On September 6, 2016, plaintiff filed a complete motion to proceed in forma pauperis, along with a certified trust account statement.

Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis is granted, and the findings and recommendations are vacated.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in

1  accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct
2  the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and
3  forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments
4  of twenty percent of the preceding month's income credited to plaintiff's prison trust account.
5  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time
6  the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. §
7  1915(b)(2).
8         The court is required to screen complaints brought by prisoners seeking relief against a
9  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
10 court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
11 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
12 monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).
13        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
14 Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th
15 Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an
16 indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
17 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
18 pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th
19 Cir. 1989); Franklin, 745 F.2d at 1227.
20        A complaint, or portion thereof, should only be dismissed for failure to state a claim upon
21 which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in
22 support of the claim or claims that would entitle him to relief.  Hishon v. King & Spalding, 467
23 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt
24 Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under
25 this standard, the court must accept as true the allegations of the complaint in question, Hosp.
26 Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light
27 most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v.
28 McKeithen, 395 U.S. 411, 421 (1969).

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs by failing to adequately treat his headaches and dizziness since 2010. Plaintiff claims he received an MRI in 2010; although he claims he was never given the results, he was told that they would re-check, but have not. Plaintiff names as defendants the wardens at High Desert State Prison: McDonald (2011) and Spearman (2016); the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Scott Kernan, Correctional Counselor Barker, Dr. Lankford, Nurse Practitioner Schmidt, Dr. Bose, and 5 doctors identified as John and Jane Does.

First, absent personal involvement, plaintiff's claims against the wardens and the Secretary of the CDCR fail to state a cognizable civil rights claim because they are solely based on a theory of respondeat superior.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)

3

(no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

Here, plaintiff's allegation that warden McDonald responded to plaintiff's attorney's letter concerning plaintiff's medical care is insufficient, without more, to state a cognizable civil rights claim. Plaintiff included no charging allegations as to warden Spearman or Secretary Kernan. Plaintiff should not include these individuals in any amended complaint.

Second, plaintiff is advised that some of his claims against some of the defendants may be barred by the statute of limitations.[1] Plaintiff signed his complaint on June 25, 2016; thus, any claims that arose prior to June 25, 2012, are likely barred by the statute of limitations.

Third, claims sounding in negligence are insufficient to demonstrate deliberate indifference to serious medical needs.

While the Eighth Amendment of the United States Constitution entitles plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d

---

[1] Federal law determines when a claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004). Because section 1983 contains no specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); Maldonado, 370 F.3d at 954. California's statute of limitations for personal injury actions was extended to two years effective January 1, 2003. Cal. Civ. Proc. Code § 335.1; Jones, 393 F.3d at 927; Maldonado, 370 F.3d at 954-55. However, the new statute of limitations period does not apply retroactively. Maldonado, 370 F.3d at 955. California law also tolls for two years the limitations period for inmates "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Civ. Proc. Code § 352.1.

1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06.)

Here, plaintiff claims that a female doctor at HDSP, not the doctor who ordered the MRI, "made a big fuss over the MRI report." (ECF No. 1 at 6.) Plaintiff claims that when Dr. Lankford returned, the doctor stated that "the other doctor just got me nervous," citing plaintiff's Ex. B. (ECF No. 1 at 6.) Exhibit B is the October 11, 2011 telemedicine neurologic consultation report, from Gregorio S. Pineda, M.D., neurologist, who states:

> HISTORY OF PRESENT ILLNESS: The patient is a 34-year-old African-American male who is complaining of a headache. This began some time in December of 2010. The headache is in the vertex and slightly to the right. It wakes him up from sleep. It is very sharp and very intense but it lasts for ten to fifteen minutes; twenty minutes at the most. There is no tearing of the eyes or running of the nose. The patient had been having blurry vision which got better with glasses. He denies hemiparesis, hemisensory loss, auditory, speech, motor or coordination problems. He denies any cardiovascular, genitourinary or pulmonary diseases.
>
> REVIEW OF STUDIES: The patient had an MRI scan of the brain which showed as small, left-sided basal ganglia cavernous hemangioma. A neurosurgeon has evaluated him and it was felt that is nonsurgical nor should it be a major problem.
>
> IMPRESSION: Non-specific headache. The description is not typical of migraine nor of cluster headaches.
>
> RECOMMENDATION: Suggest the patient be started on a prophylactic medication [blank] q.d. He should be seen back in follow up in six weeks' time. The side effects of the drug were discussed with him.

5

1    (ECF No. 1 at 31.) Plaintiff also provided the July 13, 2011 record from Dante F. Vacca, M.D.,

2    who reviewed the MRI, and opined:

> There is a small 5.0 millimeter lesion anterior limb of the internal capsule on the left at the head of the putamen, typical cavernous malformation, with a small ring of hemosiderin. This would not be producing any headache and in my opinion is an incidental finding.
>
> All I would recommend for this is repeat MRI in a year and perhaps after that repeating it in 2 years. A small percentage can have a hemorrhage, but in this deep location we would do nothing unless the patient had unequivocal documented intracerebral hemorrhage. There is no need for MRA as this does not help with the diagnosis. This would not be identified on MRA or even formal angiography. If the patient is having headache issues, my recommendation is for neurology consultation.

10   (ECF No. 1 at 33.)

11          Plaintiff claims that he's been writing sick call slips since 2010-11 to be seen about his

12   illness, and continues to have terrible headaches in 2016. He states that he got dizzy and passed

13   out in 2014, and was taken to medical for treatment including oxygen. (ECF No. 1 at 6.) Plaintiff

14   alleges he filed an administrative appeal in 2015, after which he was seen by medical staff

15   repeatedly, by even the dentist who removed some teeth. Plaintiff states that he received "blood

16   draws, etc.," during the medical appointments, and also received an EKG, but that when he brings

17   up the MRI, no MRI is given. Plaintiff claims that he still has these episodes on the yard, in the

18   cell, etc., and although he is assigned a building porter job, the officers will not allow plaintiff to

19   work because when these episodes occur, he must go to medical. (ECF No. 1 at 7, 8.) Plaintiff

20   believes the altitude at HDSP contributes to his illness, but his request for medical transfer was

21   denied. In addition, plaintiff alleges that after he filed his appeal, defendant Schmidt scheduled

22   plaintiff to see a mental health doctor without telling plaintiff. In November of 2015, plaintiff

23   saw Dr. Bose, a psychiatrist, who ran a series of tests and said he would talk to the doctors. (ECF

24   No. 1 at 9.) Plaintiff told Dr. Bose that all plaintiff wanted was an MRI because of the dizziness

25   and headaches. Plaintiff claims Dr. Bose told him that Dr. Bose would follow-up in January, but

26   plaintiff had not yet seen Dr. Bose again. (ECF No. 1 at 9.) Plaintiff seeks declaratory and

27   injunctive relief, and money damages. (ECF No. 1 at 5, 10-11.)

28   ////

Plaintiff also provides multiple inmate declarations concerning plaintiff's medical condition. (ECF No. 1 at 63-70.) For example, inmate Derrick E. Gray, C-4923, who avers that plaintiff is constantly dizzy, falling to the ground, vomiting, sweating, and complaining of headaches. (ECF No. 1 at 63.) Inmate Lamont Ward, AM-4564, plaintiff's cellmate, declares that he has witnessed numerous medical episodes where plaintiff has gone down on the yard, complains of dizziness and vertigo, vomiting, passing out, and having anxiety attacks. (ECF No. 1 at 66-67.)

As noted above, allegations arising from incidents prior to June 25, 2012, are likely time-barred. Plaintiff's allegations as to defendant Schmidt are unavailing because a referral to mental health professionals does not evidence deliberate indifference. To the extent that Dr. Bose pursued a different course of action than plaintiff believed Dr. Bose should have taken, such action does not rise to the level of a civil rights violation because it is a mere difference of opinion. Moreover, because Dr. Bose is a psychiatrist, it does not appear that he could have ordered an MRI to be performed for plaintiff. Plaintiff names two telemedicine doctors as Doe defendants,[2] but it is unclear whether one of them is Dr. Pineda who diagnosed the hemangioma, and plaintiff does not provide facts explaining what such doctors did or did not do.

However, to the extent plaintiff claims that his symptoms have worsened since the MRI was performed in 2011, and a particular medical professional has in the last four years refused to treat or re-check the basal ganglia cavernous hemangioma to determine whether the condition has

---

[2] **Error! Main Document Only.** The Ninth Circuit has held that where a defendant's identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). However, plaintiff does not identify each defendant doe and his or her alleged act committed which plaintiff contends violated his constitutional rights. This is insufficient to put prospective defendants on notice of their alleged actions or omissions that plaintiff claims violate his federal rights. In order to link these doe defendants to the alleged acts or omissions that demonstrate a violation of plaintiff's federal rights, plaintiff is granted leave to amend, to either name the defendants involved, or list the doe defendants involved. If plaintiff can only list these defendants as John Doe, plaintiff must identify the John Doe as best as possible, and allege specific acts that these doe defendants did, such as "John Doe 1 did X" and "John Doe 2 and 3 did Y." Plaintiff is reminded that "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

deteriorated, plaintiff may be able to state a cognizable civil rights claim against such individual based on the delay in treatment, or based on an alleged interference with Dr. Pineda's recommendation that plaintiff be seen back in six weeks (ECF No. 1 at 32), and Dr. Vacca's recommendation that a repeat MRI be performed in a year and every 2 years after that (ECF No. 1 at 33). A prison official who ignores a treating physician's instructions may act in deliberate indifference. See Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999) ("[A] prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon.") A prison official who interferes with the instructions of a physician may be liable for an Eighth Amendment violation. See Hamilton v. Edell, 981 F.2d 1062, 1066-67 (9th Cir. 1992) (prison officials' decision to force inmate to fly in contravention of treating physician's specific orders could constitute deliberate indifference to inmate's medical needs), overruled in part on other grounds, Saucier v Katz, 533 U.S. 194 (2001). However, plaintiff must name the individual who is responsible for providing such follow-up health care, who is aware of such recommendations, yet failed to follow them. Provided plaintiff can name the culpable medical professionals, plaintiff should renew such claims in his amended complaint as they appear to state a cognizable civil rights claim.

Therefore, plaintiff is granted leave to file an amended complaint that sets forth specific, current allegations that the named individual was deliberately indifferent to plaintiff's serious medical needs.

Fourth, plaintiff is cautioned that before he can bring his claims to federal court, he must exhaust his administrative appeals through the third level of review.[3] By the Prison Litigation

---

[3] On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7. Now, inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v.

Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Thus, in any amended complaint, plaintiff should only include allegations for which such administrative remedies as are available have been exhausted.

Accordingly, if plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v.

---

Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

1  Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original
2  pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an
3  original complaint, each claim and the involvement of each defendant must be sufficiently
4  alleged.

   However, plaintiff is not required to re-submit his exhibits.  The Clerk is directed to
separately-docket plaintiff's exhibits so that any party may refer to such exhibits in the future.

   In accordance with the above, IT IS HEREBY ORDERED that:

   1. The August 23, 2016 findings and recommendations (ECF No. 7) are vacated.

   2. Plaintiff's request for leave to proceed in forma pauperis is granted.

   3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

   4. Plaintiff's complaint is dismissed.

   5. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "Amended Complaint"; plaintiff must file an original and two copies of the amended complaint; failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

   6. The Clerk of the Court is directed to send plaintiff the form for filing a civil rights action by a prisoner, and to re-file plaintiff's exhibits (ECF No. 1 at 18-70) as a separate docket entry entitled "Plaintiff's exhibits and declarations."

Dated:  September 13, 2016

/sisc1519.14n

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE